JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

DEBORAH R. DOUGLAS (NYBN 2099372)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   Facsimile: (510) 637-3724
   E-Mail: deborah.r.douglas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR08-477 DLJ |
| ) | |
| Plaintiff, ) | GOVERNMENT'S OPPOSITION TO |
| ) | COURT-APPOINTED COUNSEL |
| v. ) | WITHOUT OPPORTUNITY TO REVIEW |
| ) | AND CHALLENGE DEFENDANTS' |
| EDITH NELSON ) | FINANCIAL DISCLOSURES IN AN |
| a/k/a EDITH HONRUBIA NELSON, ) | OPEN, ADVERSARIAL PROCEEDING |
| a/k/a EDITH GRUTAS, ) | |
| RONALD NELSON, ) | Date: August 26, 2008 at 10 a.m. |
| NELDA ASUNCION, and ) | |
| CRISTETA LAGAREJOS, ) | Magistrate Judge Wayne D. Brazil |
| ) | |
| Defendant. ) | |
| _____ ) | |

I. **INTRODUCTION**

At the court proceeding on August 5, 2008, the government informed the magistrate judge that it has substantial financial information about the defendants as the result of a long-term investigation by the Internal Revenue Service, Criminal Investigation, and the Department of Homeland Security. The government stated that, if the defendants submitted financial affidavits to obtain court-appointed counsel and requested that the affidavits be filed under seal, *ex parte* and *in camera*, it should be permitted to file *ex parte* financial information about the defendant. The

government further stated that it did not intend to move to unseal the defendant's financial affidavit, but reserved its right to do so at a future date.

Upon further reflection and research, the government has revised its position as follows: Any defendant who seeks to obtain court-appointed counsel should be required to submit a financial affidavit and/or other evidence under penalty of perjury to satisfy his or her burden of proof to establish financial eligibility, by a preponderance of the evidence, for appointed counsel pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A. The defendant should be precluded from filing a financial affidavit or other evidence under seal, and an *ex parte, in camera* proceeding should not be permitted for either the defendant or the government. Rather, both parties should be provided with notice and an opportunity to rebut the other party's claims and evidence in an open, adversarial proceeding.

Moreover, the government will agree to provide use immunity to any defendant who asserts a colorable Fifth Amendment claim that providing financial information to obtain a court-appointed counsel poses a "real and appreciable" risk of self-incrimination. The granting of use immunity would be limited to the financial information provided by the defendant for the purpose of obtaining court-appointed counsel, and would not extend to protection for perjurious or other false statements.

## II. ARGUMENT

The defendant has the burden of establishing financial eligibility for appointed counsel. United States v. Ellsworth, 547 F.2d 1096, 1098 (9th Cir. 1976); see United States v. Gravatt, 868 F.2d 585, 591 (3rd Cir. 1989) ("An individual who has the financial resources to obtain counsel does not have a right to a court-appointed attorney"); United States v. Kaufman, 452 F.2d 1202 (4th Cir. 1972) ("There is no evidence in the record that [defendant] lacked sufficient funds to retain an attorney to represent him. He has not shown either by testimony or by way of an affidavit that he is without adequate resources to provide his own counsel").

In United States v. Ellsworth, supra, 547 F.2d at 1097-98, the Ninth Circuit held that where defendant had refused to comply with the court's request that he prove his indigency by completing

a financial affidavit, the defendant was not entitled to the assistance of appointed counsel.[1] The assertion of a Fifth Amendment claim to preclude the court from further probing into the defendant's finances, is " 'a great and beneficial shield, but not much of a sword' where the defendant bears the burden of proof." Id. at 1098, quoting United States v. Schmitz, 525 F.2d 793, 795 (9th Cir. 1975); United States v. Kaufman, supra, 452 F.2d at 1202 (defendant refused to execute an affidavit of financial status to establish his indigency and therefore was not entitled to court-appointed representation).

None of the four defendants, all of whom were arrested and initially presented on July 25, 2008, have filed financial affidavits. See United States v. Ellsworth, supra, 547 F.2d 1096, 1097 ("The form is a standard questionnaire used in the United States District Courts. Those defendants requesting appointed counsel list upon it assets and debts. Questions, simply stated, as information related to employment, including monthly earnings, date of last employment if presently unemployed, earnings at that time, and employment and earnings of spouse. The affiant is also asked to give the nature and sources of other income, including interest, dividends, retirement benefits or annuity payments").

It is unknown as to which, if any, defendants intend to file financial affidavits for the purpose of seeking appointed counsel. The defendants have been placed on notice that filing a false financial affidavit could result in additional charges, including a violation of 18 U.S.C. § 1623 [False Declarations], as well as a two-level upward adjustment for Obstruction of Justice under U.S.S.G. § 3C1.1. See United States v. Hernandez-Ramirez, 254 F.3d 841, 842-44 (9th Cir. 2001) (submission of a false financial affidavit to a magistrate judge for the purpose of obtaining appointed counsel is sufficiently related to the offense of conviction to support a two-level adjustment for obstruction of justice, where the defendant failed to disclose his ownership interest in a bar).

The courts "are not required to conduct *ex parte, in camera* hearings to determine whether a defendant is eligible for appointed counsel." United States v. Sarsoun, 834 F.2d 1358, 1363 (7th

---

[1] The term "indigency" is merely a "short-hand expression" of financial inability to afford counsel. See United States v. Moore, 671 F.2d 139, 141 (5th Cir. 1982).

3

Cir. 1988) (en banc), citing United States v. Harris, 707 F.2d 653, 662-63 (2d Cir. 1983), United States v. Kaufman, supra, 452 F.2d at 1202. As the Second Circuit noted, the Criminal Justice Act "specifically provides for *ex parte* applications for services other than counsel, 18 U.S.C. § 3006A(e)(1), while there is no such requirement for proceedings involving the appointment or termination of counsel. Apparently, *ex parte* proceedings for services for services other than counsel are provided for to ensure that a defense would not be 'prematurely' or 'ill-advisedly' disclosed. Such considerations are not relevant to proceedings concerning the appointment or termination of counsel. But since Congress obviously knew how to provide for an ex parte proceeding when it seemed appropriate, the failure to do so in the context of appointment of counsel seems significant. Moreover, our legal system is rooted in the idea that facts are best determined in adversary proceedings; secret, ex parte hearings 'are manifestly conceptually incompatible with our system of criminal jurisprudence. . . speculative possibility of inadequate protection of defendant's fifth amendment rights is outweighed by the need to determine facts through adversarial proceedings.'" United States v. Harris, supra, 707 F.2d at 662-63 (defendant failed to prove financial inability to afford counsel).

This Court should conduct an adversarial, rather than *ex parte*, hearing so that both the government and the defendant have the opportunity to rebut the other party's claims and evidence in an open, adversarial proceeding. See United States v. Sarsoun, supra, 834 F.2d at 1364 (preference for an adversarial, rather than *ex parte*, hearing so that the government has an opportunity to object to the statements by the defendant); United States v. Harris, supra, 707 F.2d at 661 ("a court need not take at 'face value' an affidavit professing 'sudden indigency' which contains material misstatements and misrepresentations. Rather, certainly where a defendant's inability to afford counsel has been put into doubt, he has the burden of coming forward with evidence to rebut the government's evidence of ability to afford counsel. If a defendant fails to come forward with additional evidence instead of relying on a terse form affidavit, and fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated") [internal citations omitted].

At the court proceeding before the magistrate judge on August 5, 2008, the provisionally-appointed attorney for defendant Nelda Asuncion conclusorily asserted that the Fifth Amendment may apply to disclosure of her client's financial status. However, the defendant's "claim of Fifth Amendment protection against self-incrimination is based on the assumption that execution of the financial disclosure form would incriminate him." United States v. Peister, 631 F.2d 658, 662 (10th Cir. 1980). As the Tenth Circuit noted, "[w]e know neither the financial ability of the defendant nor what use, if any, might ever be made by the government of defendant's statements with regard to financial ability. The burden is on the defendant to demonstrate financial inability in order to obtain counsel. We hold defendant should not be relieved of this burden when any conflict with the Fifth Amendment right is speculative and prospective only. The time for protection will come when, if ever, the government attempts to use the information against the defendant at trial. We are not willing to assume that the government will make such use, or if it does, that a court will allow it to do so" [internal citation omitted]. Id. at 662.

The Ninth Circuit expressly has agreed with the Tenth Circuit's holding in Peister that " '[t]he time for protection will come when, if ever, the government attempts to use the information [contained in the financial affidavits] against the defendant at trial,' or if the government attempts to use any information derived from the facts revealed in the affidavits." Seattle Times Company v. United States District Court, 845 F.2d 1513, 1519 (9th Cir. 1988), quoting United States v. Peister, supra, 631 F.2d at 662. The Ninth Circuit held that the defendant's "assumption is premature" that the contents of the financial affidavits would incriminate him because "[w]e do not know what use, if any, the government will try to make of the information contained in the affidavits." Id. at 1519; see United States v. Sarsoun, supra, 834 F.2d at 1364 (same); see United States v. Hitchcock, 992 F.2d 236, 239 (9th Cir. 1993) ("The Ninth Circuit has not decided the amount of protection such financial disclosures should receive").

Although acknowledging in Seattle Times that it had not previously decided whether a defendant acts under state compulsion when he discloses financial information in order to obtain appointed counsel, the Ninth Circuit "noted that execution of such an affidavit may raise fifth amendment concerns," citing the facts in United States v. Ellsworth, supra, 547 F.2d 1096, that "the

5

court did not need to address whether the testimony was compelled because any self-incrimination problem was alleviated when the court assured the defendant that the affidavits would not be used in a future criminal prosecution." Id. at 1518 n. 4. The Ninth Circuit made clear that "[w]e do not read Ellsworth as condoning the practice of assuring a defendant that material will be sealed and not disclosed to the government, since any sealing order is subject to review. An unqualified assurance would be appropriate only if the government agreed in advance not to utilize the information if it were ordered disclosed." Id.

The Ninth Circuit recognized in Seattle Times that the Supreme Court had considered, but did not decide, the issue of whether "use immunity" conferred on a defendant to protect his testimony at a suppression hearing (Simmons v. United States, 390 U.S. 377 [1968]) extends to a defendant's statements regarding his financial status to obtain court-appointed counsel. Id. at 1519, citing United States v. Kahan, 415 U.S. 239 (1974). In Kahan, the Supreme Court stated that "[t]he truth of the matter was that [defendant] was not indigent, and did not have a right to appointment of counsel under the Sixth Amendment" and therefore was not "faced with the type of intolerable choice Simmons sought to relieve. The protective shield of Simmons is not to be converted into a license for false representations on the issue of indigency free from the risk that the claimant will be held accountable for his falsehood." Id. at 243.

In Seattle Times, the Ninth Circuit stated that, "[i]f a defendant seeking a court-appointed attorney refuses to file a financial affidavit and claims the protection of the fifth amendment, we have to decide the question left open in Kahan. At that time, as Justice Marshall noted, a choice will be required:

> The first alternative is to permit the defendant seeking counsel as an indigent to lie about his financial situation wherever the truth might be incriminating. As a second alternative, we could require the defendant seeking appointment of counsel to tell the truth at the indigency hearing, and subject him to sanctions for his willful and knowing failure to do so, but bar use of any incriminating information so revealed.

Kahan, 415 U.S. at 247, 94 S.Ct. at 1183 (Marshall, J., dissenting). If we follow the rationale of Simmons and adopt the second alternative, we will hold that defendants who incriminate themselves when executing financial affidavits enjoy use immunity." Seattle Times, 845 F.2d at

6

1519. Justice Marshal concluded in Kahan that "[t]he solution, then, to the tension between the Fifth and Sixth Amendments is to require the defendant seeking appointment of counsel to tell the truth at his indigency hearing, and to bar use of any incriminating information so revealed. This approach is fully consistent with our Fifth Amendment cases. A witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant." Id. at 249.

Neither the Supreme Court nor the Ninth Circuit has decided the issue of whether requiring a defendant to submit financial information necessary to obtain court-appointed counsel amounts to compulsion under the Fifth Amendment. Without conceding the issue, and in the interests of maintaining the veracity of the criminal justice system, the government will agree in advance not to utilize the defendants' financial disclosures in its case-in-chief. See United States v. Gravatt, 868 F.2d 585, 590 (3rd Cir. 1989) ("if the trial court deems an adversary hearing on defendant's request for appointment of counsel to be appropriate, the court may grant ue immunity to the defendant's testimony at that hearing"); United States v. Ellsworth, supra, 547 F.2d at 1098 (defendant was "given written assurance by an order of the court that information disclosed on the form could not be used for further tax prosecution"); United States v. Sarsoun, supra, 834 F.2d at 1364 (the judge "repeatedly assured [defendant] that the government could not use the information he supplied in the financial affidavit to incriminate him").

Further, the granting of use immunity resolves the magistrate judges' concerns in United States v. Hickey, 185 F.3d 1064 (9th Cir. 1999), and United States v. Hyde, 208 F.Supp.2d 1052 (N.D.CA 2002), that financial information disclosed by the defendant to obtain court-appointed counsel could be used in the government's case-in-chief.

## CONCLUSION

For all the reasons stated above, the United States respectfully submits that this Court should (1) preclude any defendant who seeks court-appointed counsel from filing a financial affidavit under seal, *ex parte* and *in camera*; (2) provide the government and defendant with the opportunity to rebut the other party's claims and evidence in an open, adversarial proceeding; and (3) upon the government's motion, grant use immunity to any defendant who asserts a colorable Fifth Amendment claim based upon the defendant's financial disclosures to obtain court-appointed counsel.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

8/16/08
Dated

DEBORAH R. DOUGLAS
Assistant United States Attorney