JOHN J. JORDAN, ESQ. (State Bar No. 175678)
400 Montgomery Street, Suite 200
San Francisco, CA 94104
Tel: (415) 391-4814
Fax: (415) 391-4308

Counsel for Defendant
CRISTETA LAGAREJOS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 08-0477 DLJ |
| ) | |
| Plaintiff, ) | **DEFENDANT LAGAREJOS' POINTS** |
| vs. ) | **AND AUTHORITIES RE SUBMISSION** |
| ) | **OF CJA AFFIDAVIT UNDER SEAL** |
| CRISTATA LAGAREJOS, ) | |
| ) | Date:  August 26, 2008 |
| Defendant. ) | Time: 10:00 a.m. |
| _____ ) | Hon. Magistrate Wayne D. Brazil |

## INTRODUCTION

The defendant, Cristata Lagarejos, through counsel of record, files this memorandum of points and authorities, in support of her request that this Court appoint counsel pursuant to 18 U.S.C. sect. 30006A to represent her in the above-pending criminal indictment and allow her application for appointment of counsel (form CJA 23) be submitted *ex parte* and under seal, to safeguard her protection against self-incrimination under the Fifth Amendment.  In addition, the defendant objects to a request by the government to file evidence *ex parte* in support of its contention that the defendant is not entitled to appointed counsel, to the extent that the government still maintains this position.

The defendant, in addition to filing this memorandum, also joins in the memorandum filed by co-defendant Nelda Asuncion.

## STATEMENT OF FACTS

The defendant is charged by indictment, with three other defendants, in a 126 count

LAGAREJOS CJA MEM                           1

indictment. The indictment contends that Lagarejos recruited straw buyers and prepared fraudulent loan applications and real estate documents in the names of the straw buyers, which were then processed with financial institutions. The indictment also alleges that Lagarejos received commissions that were paid to Legacy Financing, which the indictment identifies as a real estate and mortgage broker business owned by the defendant.

Lagarejos is individually charged with conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. section 1349 (count one); bank fraud, in violation of 18 U.S.C. section 1344 (counts twenty-four through thirty-one); wire fraud, in violation of 18 U.S.C. section 1343 (counts fifty-eight through sixty-one); conspiracy to commit money laundering, in violation of 18 U.S.C. section 1956(h) (count sixty-two); and money laundering, in violation of 18 U.S.C. section 1957 (counts ninety-nine through one hundred thirteen)

The United States has alleged throughout the indictment that the defendant, along with the charged co-defendants, engaged in a complex financial scheme to defraud, including "using multiple bank accounts to transfer and withdraw funds in order to evade detection by law enforcement." See Indictment, count sixty-two, subpara. n.

**ARGUMENT**

**1.    This Court Can Seal the Defendants's CJA Form 23**

The defendant asks this court to seal the CJA form 23, application for appointment of counsel, in order to safeguard the defendant's Fifth Amendment right against self-incrimination, while affording the defendant her right to counsel. This case, which involves charges of financial misdealing and money laundering, raises the issue of a defendant's Fifth Amendment and Sixth Amendment rights where the defendant seeks appointment of counsel under the CJA in a case implicating her finances. Because the Fifth Amendment conflict here is actual and real and the need for protection accordingly immediate, the defendant here should be permitted to present financial information under seal in an *ex parte*, *in camera* proceeding. See *United States v. Hilson,* 2004 U.S. Dist. LEXIS 20355 (S.D.N.Y. 2004).

1      The *Fifth Amendment* provides that "no person . . . shall be compelled in any criminal
2  case to be a witness against himself . . . ." *Id., citing U.S. Const. amend V*.  This privilege against
3  self-incrimination protects an accused from being incriminated by his or her own compelled
4  testimony.  *Fisher v. United States,* 425 U.S. 391, 409 (1976); see also *Kastigar v. United States*,
5  406 U.S. 441, 445 (1972).  To qualify for the *Fifth Amendment* privilege, a communication must
6  be testimonial, incriminating, and compelled. See *United States v. Hubbell,* 530 U.S. 27, 34-38
7  (2000).  "The privilege afforded not only extends to answers that would in themselves support a
8  conviction . . . but likewise embraces those which would furnish a link in the chain of evidence
9  needed to prosecute the claimant." *Hoffman v. United States,* 341 U.S. 479, 486 (1951); see also
10 *Hubbell*, 530 U.S. at 37 (stating that it has "long been settled that [the *Fifth Amendment's*]
11 protection encompasses compelled statements that lead to the discovery of incriminating
12 evidence even though the statements themselves are not incriminating and are not introduced into
13 evidence").
14     The *Sixth Amendment* provides that "in all criminal prosecutions, the accused shall enjoy
15 the right . . . to have the Assistance of Counsel for his defense." *U.S. Const. amend. VI*.  It has
16 long been recognized that "in federal courts counsel must be provided for defendants unable to
17 employ counsel unless the right is competently and intelligently waived." *Id.,* citing *Gideon v.*
18 *Wainwright,* 372 U.S. 335, 340 (1963); see also *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972)
19     The CJA directs that each United States District Court shall set in place a plan for
20 furnishing representation for any person financially unable to obtain adequate representation. *See*
21 18 U.S.C. § 3006A(a).  Under the act, it is the defendant's burden to establish financial eligibility
22 for appointed counsel.  *United States v. Ellsworth,* 547 F.2d 1096 (9th Cir. 1976).
23     The defendant here asks this court to allow her to file, under seal, the CJA Form 23.  As
24 counsel for co-defendant Asuncion points out in her memorandum, Judge Chen, in *United States*
25 *v. Hyde,* 208 F.Supp.2d 1052 (N.D. Cal. 2002), ruled in defendant's favor in a similar case.
26     The government, in its memorandum, argues that this Court should conduct an

1  adversarial, rather than an *ex-parte* hearing, relying principally on law from other Federal
2  Circuits. As the district court in *Hilson* detailed, there is a split in the circuits on this issue of
3  whether to conduct an *ex-parte* proceeding or conduct an adversary proceeding. *United States v.*
4  *Hilson,* 2004 U.S. Dist. LEXIS 20355 (S.D.N.Y. 2004).

5  However, as *Hilson* also points out, the Ninth Circuit, along with the Courts of Appeals
6  for the Third, Fourth, and Eighth Circuits, "have expressed at least implicit acceptance for *ex*
7  *parte* procedures, although these courts generally have refrained from indicating that *ex parte*
8  proceedings are the most appropriate or exclusive method for addressing arguable conflicts
9  between the Fifth and *Sixth Amendments*." *United States v. Hilson,* 2004 U.S. Dist. LEXIS
10 20355 (S.D.N.Y. 2004), citing *United States v. Anderson,* 567 F.2d 839 (8th Cir. 1977); *United*
11 *States v. Davis,* 958 F.2d 47 (4th Cir. 1992); *United States v. Ellsworth, 547 F.2d 1096, 1097-98*
12 *(9th Cir. 1977)* (concluding that a defendant charged with tax violations had not been
13 impermissibly denied counsel when he declined to file a complete CJA 23 despite the district
14 court's written assurance that the CJA 23 would be reviewed *in camera*, sealed, and could not be
15 used for further tax prosecution). The *Hilson* court also pointed out that in *United States v.*
16 *Gravatt,* 868 F.2d 585 (3d Cir. 1989), "the Court of Appeals for the Third Circuit explicitly
17 recognized the different pretrial approaches available but refrained from endorsing one method
18 exclusively, instead deeming the choice between *ex parte* proceedings and grants of use
19 immunity a discretionary matter for the district court." *Hilson,* citing *Gravatt,* 868 F.2d at 589-
20 91.

21 Thus, circuit law in the Ninth Circuit appears to be against the government, and there is
22 support for this view in other circuits as well. Here, under the particular facts of this case, where
23 the Fifth Amendment conflict here is actual and real and the need for protection accordingly
24 immediate, the defendant here should be permitted to present financial information under seal in
25 an *ex parte*, *in camera* proceeding.

26 The indictment charges Lagarejos with engaging in a complex scheme to defraud, and

1 then engaging in money laundering to hide the money accumulated in this scheme. It appears
2 that proof of Lagarejos' receipt of these proceeds is part of the government's case in chief. Put
3 simply, the government alleges in its indictment that Lagarejos made money illegally and then
4 paid it into her own bank accounts. Proof of ownership of assets by Lagarejos would corroborate
5 the government's case. In order to complete the CJA form accurately, Lagarejos must detail all
6 of her assets. Knowledge of this financial information will help the government, even if the
7 defendant is granted use immunity. The government will have full knowledge of the defendant's
8 financial situation, as it continues its investigation of the defendant in this financial case.

9     To put it another way, if the defendant was financially able to pay a private attorney the
10 large retainer that would be required to hire private counsel in such a complex indictment, this
11 Court would never allow the government to nevertheless force the defendant to fill out a financial
12 disclosure form and disclose it to the prosecution pre-trial.

13     The government has proposed granting use immunity. Even if granted use immunity, the
14 government would still have the information, for use in developing leads and other evidence.
15 This goes counter to the Supreme Court's holdings that the privilege against self-incrimination
16 "not only extends to answers that would in themselves support a conviction . . . but likewise
17 embraces those which would furnish a link in the chain of evidence needed to prosecute the
18 claimant." *Hoffman v. United States,* 341 U.S. 479, 486 (1951).

19     Here, however, because Lagarejos cannot afford to pay a large retainer, the government
20 seeks to see just such a detailed financial statement. Lagarejos should not be forced to disclose
21 her financial holdings to the government, just because of her lack of sufficient wealth to hire a
22 private attorney.

23 **2.**     **The Government's Request to File Information Under Seal**

24     It appears from the government's filings that it has abandoned this position. In the event
25 counsel for Lagarejos has misread the filings, then counsel objects and joins the arguments put
26 forth in co-defendant's Asuncion's filing.

LAGAREJOS CJA MEM                         5

## CONCLUSION

The defendant's request should be granted.

                              /S/

JOHN J. JORDAN
Counsel for Defendant
CRISTETA LAGAREJOS