JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

DEBORAH R. DOUGLAS (NYBN 2099372)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   Facsimile: (510) 637-3724
   E-Mail: deborah.r.douglas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR08-477 DLJ |
|           Plaintiff, ) | GOVERNMENT'S REPLY TO DEFENDANTS' POINTS AND AUTHORITIES REGARDING COURT-APPOINTED COUNSEL |
|           v. ) | |
| EDITH NELSON ) a/k/a EDITH HONRUBIA NELSON, ) a/k/a EDITH GRUTAS, ) | Date: August 26, 2008 at 10 a.m. |
| RONALD NELSON, ) NELDA ASUNCION, and ) | Magistrate Judge Wayne D. Brazil |
| CRISTETA LAGAREJOS, ) ) | |
|           Defendant. ) ) | |

I.  **INTRODUCTION**

     Defendants Cristeta Lagarejos and Nelda Asuncion have not provided any legitimate justification to support their contention that, for the purpose of obtaining court-appointed counsel, they should be permitted to file financial affidavits *ex parte* and under seal, while denying the government the opportunity to review and challenge their financial disclosures in an open, adversarial proceeding. Moreover, the defendants' speculative assertions of the possibility of inadequate protection of their right against self-incrimination have been rejected by the Supreme Court and the Ninth Circuit as a basis for a Fifth Amendment claim. See, e.g., Seattle Times

Company v. United States District Court, 845 F.2d 1513, 1519 (9th Cir. 1988) In addition, the government's agreement to provide use and derivative use immunity will protect against any financial disclosures that the defendant "reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." Kastigar v. United States, 406 U.S. 441, 444-45 (1972).  For the reasons set forth below, the defendants' arguments have no merit.

## II. ARGUMENT

The Criminal Justice Act ("CJA") provides for the appointment of counsel only when the judge is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel. 18 U.S.C. § 3006A(b)."  United States v. Bauer, 956 F.2d 693, 694 (7th Cir. 1992).  After a full exploration of the defendant's financial status, the courts are required to determine if a defendant has the financial ability to retain counsel, or whether partial payment for the services of an attorney is appropriate. See United States v. Barcelon, 833 F.2d 894, 898 (10th Cir. 1987).

The defendant bears the burden of proving inadequate financial means to obtain counsel. United States v. Ellsworth, 547 F.2d 1096, 1098 (9th Cir. 1976).  As part of this burden, defendant "has the responsibility of providing the court with sufficient and accurate information upon which the court can make an eligibility determination."  7 Administrative Office of the United States Court, Guide to Judiciary Policies and Procedures § 2.03(C).  The courts may "refuse to appoint counsel if it finds that the defendant's portrayal of financial inability lacks credibility" United States v. Barcelon, supra, 833 F.2d at 897 & n. 5 (collecting cases).  An adverse decision to the defendant "will not be reversed unless clearly erroneous." United States v. Sarsoun, 834 F.2d 1358, 1363 (7th Cir. 1987) (en banc) (by blocking legitimate inquiry into his financial condition, defendant "impliedly waived his right to counsel").

"It is not enough to *claim* inability to hire a lawyer and back up the claim with an affidavit; the statute provides for 'appropriate inquiry' into the veracity of that claim . . . the public fisc need not contribute one penny unless the accused first establishes that he cannot afford counsel" (emphasis in original). United States v. Bauer, supra, 956 F.2d at 694-95..  Although the CJA does not further define an "appropriate inquiry," the procedure "necessarily varies with the circumstances presented, and no one method or combination of methods is required." See United States v.

Barcelon, supra, 833 F.2d at 897; United States v. Foster, 867 F.2d 838, 841 (5th Cir. 1989) ("No particular method of determining the defendant's means, however, is required by the Act. The burden rests with the defendant to establish insufficient financial means to employ counsel"). In submitting the Criminal Justice Act to Congress in 1963, Attorney General Robert F. Kennedy stated:

> the requirement of an 'appropriate inquiry' to determine the defendant's financial need is intended to assure that the court, *by hearing, affidavit or other suitable investigation*, will scrutinize all applications for representation (emphasis added).

H.R. Rep. No. 864, 88th Cong., 1st Sess., *reprinted in* 1964, U.S. Code Cong. & Admin. News 2990, 2996.

In addition to investigating the defendant's assets, liabilities, income, and obligations, the "courts have taken into account a broad range of additional considerations where warranted," including the needs of the defendant and his family, the amount the defendant posted as bail, the expense and extent of legal services which the defendant requires, amounts given the defendant by others for limited purposes only, whether the defendant has secreted assets, the availability of income to the defendant from other sources such as a spouse, or trusts, estates, or the like, and whether assets may be liquidated or otherwise available. See United States v. Barcelon, supra, 833 F.2d at 897 & n. 5 (collecting cases); see United States v. Schmitz, 525 F.2d 793, 794 (9th Cir. 1975) (inquiry includes transfers in trusts); United States v. Martinez-Torres, 556 F.Supp. 1275, 1277, 1279 (S.D.N.Y. 1983) ("Financial inability includes an inquiry into whether there is available to defendant funds for his defense from other sources such as family, friends, trusts, estates, or defense funds"; defendants failed to carry their burden of establishing that they were financially unable to retain counsel).

In United States v. Salemme, 985 F.Supp. 197, 200 (D. Mass. 1997), the district court took a bifurcated approach. The court "decided that in the first instance it will receive *ex parte* submissions from the defendants and the government. If possible and appropriate, the court will decide whether to appoint counsel based on those submissions. If those submissions indicate that an adversary hearing is necessary or appropriate, the court will then provide the defendants use

immunity for their statements, order the exchange of the parties' submissions, and conduct that hearing." As in Salemme, the government initially had suggested to the magistrate judge on August 5, 2008 that the defendants and the government submit financial information *ex parte* for the court's review. However, upon further reflection, the government revised its position and argued that all parties should be provided with notice and an opportunity to rebut the other party's claims and evidence in an open, adversarial proceeding (Government's Opposition). This is the only approach that will result in a full and reliable portrayal of the defendants' financial status. Moreover, without notice of the claims set forth in the defendants' financial affidavits, the government would be placed in an untenable position of having to blindly weigh the risk of providing an advanced viewing of substantial evidence concerning the defendant's assets and income, most of which constitutes work product, against the risk of providing select, and thus possibly inadequate, financial information to rebut the defendant's undisclosed claims. The district court in United States v. Hilsen, 2004 U.S. Dist. LEXIS 20355 (S.D.N.Y. 2004), reached the same conclusion in rejecting the defendant's suggestion that he and the government submit *ex parte* information about his financial status. As the court stated,

> Hilsen has also proposed that he be permitted to submit his CJA 23 *ex parte* and the government permitted to submit opposition based on the presumed contents of Hilsen's CJA 12, thus allowing the government to be heard while still affording Hilsen protection. Acceptance of Hilsen's proposal would lead to a proceeding that is neither truly adversarial in the manner intended by the Harris court nor likely to lead to a reliably fulsome factual picture, as the government, opposing Hilsen's application without any knowledge of the assets or income set forth in Hilsen's CJA 23, would perforce need to weigh the risk of providing Hilsen with an advance viewing of all of its evidence concerning his assets and income against the risk of proving select, and thus possibly inadequate, information. A bifurcated approach whereby each party submits material *ex parte* might resolve some of the concerns just identified but would still run contrary to Harris to the degree that true adversarial confrontation and the attendant benefits would be lacking.

United States v. Hilsen, 2004 U.S. Dist. LEXIS 20355 *34-35; 2004 WL 2284388 *10 (S.D.N.Y.).[1]

---

[1] The government has cited to the unpublished decision in Hilsen only because defendant Nelda Asuncion has cited to this case in her points and authorities filed on August 18, 2008.

4

There is a presumption of openness in criminal proceedings which originates from the First amendment and common law. See Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 509 (1984); Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 9-10 (1986) (*Press Enterprise II*). Although closed proceedings are "not absolutely precluded," they "must be rare and only for cause shown that outweighs the value of openness." Press-Enterprise I, 464 U.S. at 523; see United States v. Kodzis, 255 F.Supp.2d 1140, 1145 (S.D.CA. 2003) ("The Supreme Court as well as the Ninth Circuit have made clear that criminal proceedings are presumptively open. The public has an appreciable interest in the criminal proceedings at issue here, where [defendant] requests that counsel be appointed by the Court and paid for by the government"); United States v. Hilsen, supra, 2004 U.S. Dist. LEXIS 20355 *18 ("That the use of an adversarial proceeding might force the defendant to make an 'unappealing choice' was not, in and of itself, an adequate reason to bar such a proceeding"), citing United States v. Harris, 707 F.2d 653, 662 (2d Cir. 1983).

The United States respectfully submits that the presumption of openness in criminal proceedings should be applied to any requests by the defendants in this case for court-appointed counsel at the public's expense, especially under circumstances where the defendants' inability to afford counsel has been placed into doubt. See United States v. Sarsoun, supra, 834 F.2d at 1363-64 (the courts "are not required to conduct *ex parte, in camera* hearings to determine whether a defendant is eligible for appointed counsel. . . a trial court may prefer an adversarial, rather than *ex parte*, hearing so that *the government has an opportunity to object to the statements by the defendants*") (emphasis added); United States v. Harris, supra, 707 F.2d at 662 (it was not error for the district court to find no indigency where the defendant declined to supply additional information to the court unless the proceedings were held *in camera* and without the government's participation); United States v. Coniam, 574 F.Supp.615, 617 & n. 2 (D.Conn. 1983) (rejecting the notion of *ex parte* proceedings as inconsistent with traditional adversarial proceedings and noting that the CJA "does not mandate nor seemingly contemplate a closed presentation of financial information," the court concluded that the role of the government was "appropriately invited by the approval of an adversarial process by which to insure the propriety of defendant's receipt of services of counsel under the CJA).

5

Defendants have not set forth any legitimate rationale under the facts, the law, or the United States Constitution that would support that their financial affidavits to obtain court-appointed counsel paid by public funds should be treated in any manner other than part of the public record. The government has an obligation to assist the court in rendering a fully informed and accurate decision on the issue of whether those defendants who seek court-appointed counsel have satisfied their burden of proof.

Defendants Cristeta Lagarejos and Nelda Asuncion seek to submit financial affidavits, *ex parte* and *in camera*, to deny the government the opportunity to review and rebut their claims on the purported ground of a Fifth Amendment privilege. However, as set forth in the Government's Opposition, neither the Supreme Court nor the Ninth Circuit has decided the issue of whether requiring a defendant to submit financial information necessary to obtain court-appointed counsel amounts to compulsion under the Fifth Amendment. See United States v. Kahan, 415 U.S. 239 (1974); Seattle Times Company v. United States District Court, 845 F.2d 1513, 1518 n. 4 ("This court has not previously decided whether a defendant acts under state compulsion when he discloses financial information in order to obtain appointed counsel"); United States v. Hitchcock, 992 F.2d 236, 239 (9th Cir. 1993) ("The Ninth Circuit has not decided the amount of protection such financial disclosures should receive").

Moreover, assuming *arguendo* that the Fifth Amendment privilege applies to financial disclosures to obtain court-appointed counsel, defendant must be faced with a "real and appreciable," and not merely "imaginary and unsubstantial" threat of self-incrimination. See Marchetti v. United States, 390 U.S. 39, 48 (1968); Seattle Times Company v. United States District Court, supra, 845 F.2d at 1519 (defendant's "assumption is premature" that the contents of the financial affidavits would incriminate him because "[w]e do not know what use, if any, the government will try to make of the information contained in the affidavits"), quoting United States v. Peister, 631 F.2d 658, 662 (10th Cir. 1980); accord, United States v. Harris, supra, 707 F.2d at 663 ('the speculative possibility of inadequate protection of defendant's fifth amendment rights is outweighed by the need to determine facts through adversarial proceedings"); United States v. Krzyske, 836 F.2d 1013, 1018-19 (6th Cir. 1988) ("it was proper for the district court to refuse to

appoint counsel until [defendant] proved his indigency . . . defendant should not be relieved of his burden [to demonstrate financial inability] when any conflict with the Fifth Amendment is speculative and prospective only"); United States v. Madrzyk, 990 F.Supp. 1004, 1007 (N.D.Ill. 1998) ("the Government should not be denied the opportunity to provide the court with information contrary to [defendant's] financial affidavit, if any exists, because of the 'speculative possibility of inadequate protection' of [defendant's] Fifth Amendment privileges. Therefore, the court denies [defendant's] motion to conduct an ex parte, in camera hearing to determine appointment of counsel, and to file his financial affidavit under seal"); see also United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990) (although the Fifth Amendment may be invoked during pretrial proceedings, "a constitutional violation occurs only at trial," as the privilege against self-incrimination is fundamentally a trial right).

In its opposition, the government stated that, without conceding the issue of whether financial disclosure for the purpose of obtaining court-appointed counsel falls within the scope of the Fifth Amendment, it will agree in advance not to utilize the defendants' financial disclosures in its case-in-chief (Government's Opposition, p. 7). Defendant Lagarejos contends that, even if use immunity were granted, "the government would still have the information for use in developing leads and other evidence" (Defendant's Points and Authorities, p. 5). However, defendant's argument contradicts the Supreme Court's explicit holding that the granting of use and derivative use immunity will protect against any disclosures that the defendant "reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." Kastigar v. United States, 406 U.S. 441, 444-45 (1972); see also United States v. Hilsen, supra, 2004 U.S. Dist. LEXIS 20355 *34 (defendant's "mere speculation that the government may be able to develop leads from information contained in his CJA 23" does not "justify the invocation of an ex parte approach").

In Kastigar, the Supreme Court concluded that "immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity,

7

which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege." Id. at 453.

Consistent with Kastigar, transactional immunity under 18 U.S.C. §§ 6002 and 6003 does not apply to the issue at hand. Rather, the government will agreed in advance that use and derivative use immunity will preclude it from using any of defendants' financial disclosures to obtain court-appointed counsel in its case-in-chief and evidence derived therefrom as an investigatory lead. The courts have been granting use immunity for disclosure of defendants' financial disclosures, which the Ninth Circuit has made clear should not be granted without the government's agreement in advance. See Seattle Times Company v. United States District Court, supra, 845 F.2d at 1518 n. 4.[2]

In sum, the defendants cannot arbitrarily exclude the government from participation in an open, adversarial proceeding based merely upon their say-so that their financial disclosures should be kept secret and not subject to the government's review. If this Court agrees that defendants have failed to demonstrate justification for an *ex parte, in camera* proceeding, the United States respectfully submits that the method for conducting an open proceeding is flexible. The government recommends as follows: (1) the government should be provided with a copy of any financial affidavit submitted by a defendant who seeks court-appointed counsel; (2) after the government has had the opportunity to review the financial affidavits, it will provide those defendants and this Court with its materials that are responsive to defendants' claims in their affidavits; (3) the parties can proceed by proffer at the next court proceeding; and (4) if additional evidence or clarification is necessary, inquiry of the defendants and/or other witnesses under oath by this Court and/or the parties may be conducted as determined by this Court. See, e.g., United States v. Deutsch, 599 F.2d 46, 49 (5th Cir. 1979) (at a full-blown hearing, the defendant not only

---

[2] If this Court agrees with the government that use and derivative use immunity should be granted to those defendants who seek court-appointed counsel, but believes that the authority to grant such immunity falls within the jurisdiction of an Article III judge, the government would have no objection to preparing a proposed order for review by the assigned district court judge.

8

testified under oath that he was unable to pay for counsel, but the government presented a number of witnesses concerning the defendant's financial status and the district court determined that defendant had sufficient funds to retain counsel); United States v. Foster, supra, 867 F.2d at 841 (the trial judge offered to conduct an in-depth hearing regarding defendant's financial ability to obtain counsel, but defendant waived his right to counsel).

## CONCLUSION

For all the reasons stated above, and in the government's original opposition, the United States respectfully submits that this Court should (1) preclude any defendant who seeks court-appointed counsel from filing a financial affidavit under seal, *ex parte* and *in camera*; (2) provide the government and defendant with the opportunity to rebut the other party's claims and evidence in an open, adversarial proceeding; and (3) upon the government's motion, grant use and derivative use immunity to any defendant who asserts a colorable Fifth Amendment claim based upon the defendant's financial disclosures to obtain court-appointed counsel.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

8/20/08
Dated

DEBORAH R. DOUGLAS
Assistant United States Attorney

9