UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDITH NELSON, RONALD NELSON, NELDA ASUNCION, CRISTETA LAGAREJOS,<br><br>Defendants.<br>_____/ | No. CR 08-OO477 DLJ (WDB)<br><br>ORDER RE PROCEDURE TO BE FOLLOWED IN ASSESSING DEFENDANTS' ELIGIBILITY FOR COURT APPOINTED COUNSEL |

Having considered the pertinent authorities and the written and oral arguments presented by counsel, the Court has concluded that the procedure outlined herein effects an appropriate balance between the competing interests that are at play in this case in the dispute between the parties about how the Court should meet its obligation to make appropriate inquiry into the financial status of the defendants.

Defendants Asuncion and Lagarejos have persuaded the Court that disclosing truthful and complete financial declarations to the government would create a "real and appreciable" threat of self-incrimination. Evidence about the sources, paths, and disposition of the defendants' income is likely to be central to the prosecution – and

1

1  these are matters about which the defendants' financial declarations might well have
2  significant probative value.

3        The government has responded to this circumstance by offering to forego using
4  any of the information disclosed in the defendants' financial declarations either
5  directly in its case in chief or to help uncover other evidence for use in its case in
6  chief. This offer, while significant, does not eliminate the threat to defendants' Fifth
7  Amendment rights that disclosing their financial declarations would pose. The
8  government's offer would not protect defendants against use (direct or derivative) of
9  their financial information during cross-examination or in the rebuttal stages of the
10 trial of this case. Nor does the government's offer protect defendants against use of
11 their financial information in a possible subsequent prosecution that could be based
12 on conduct or allegations that are not reached by the pending indictment (the period
13 covered in the present case closes in June of 2007 for the Nelsons and in January of
14 2007 for the other defendants).

15       There is an additional consideration that comes into play here. While the Court
16 does not doubt the sincerity of the prosecutor's offer not to use any of the disclosed
17 financial information to help discover other incriminating evidence or to inform even
18 indirectly any other aspect of the government's development or presentation of its
19 case in chief, the Court worries about whether even the most sincere prosecutor or
20 case agent could keep this kind of promise. Is it realistic to expect a prosecutor and
21 case agents to be able to compartmentalize (wall off) the disclosed information as
22 rigidly as keeping this promise would require? Once the government's lawyers and
23 investigators learn this information, how could even they be sure that it did not play
24 some role in their thinking about how to most effectively develop leads, or their
25 thinking about what additional kinds of evidence might be useful and how to go about
26 finding or presenting it?

27
28

The difficulty prosecutors and federal investigators can be expected to have keeping this kind of information locked in its legally permissible box gives rise to two additional problems: in this particular factual setting, the court is likely to find it very difficult to determine whether the government has complied with its promise – and the foreseeability of that difficulty is likely to undermine defendants' confidence that the protections that the 5th Amendment promises are being honored. Fear (by defendants and/or their lawyers) that their truthfully disclosed financial information would end up contributing to their conviction would pressure defendants either to decide not to seek appointed counsel or to lie on their declarations. The more pressure to lie in their declarations that defendants feel, the greater the threat will be to Congress' goal of determining reliably which defendants are entitled to publicly paid representation.

In the circumstances of this case, a full adversarial proceeding to determine whether defendants' qualify for appointment of counsel, as urged by the government, would threaten to cause a much deeper and more intimidating invasion of defendants' Fifth Amendment rights – and would set a precedent that other prosecutors in other cases might abuse in order to gain access to information from the defense that would otherwise remain shielded and inaccessible. Prosecutors might be tempted to use such a hearing, in a context like this, as a means to end run Congressionally mandated limits on pretrial discovery and/or to try to get a preview of key aspects of how the defense would try the case. Faced with such a scenario, defendants would feel acute pressure to abandon their right to publicly paid counsel.

Converting the process of determining eligibility for appointment of counsel into full adversarial proceedings also would impose quite substantial new demands on the resources of the courts – demands that there is no reason to believe Congress anticipated or would want to fund.

Given all of these considerations, the Court holds that, in the factual setting presented here, it is neither necessary nor appropriate to transform the process of

determining the defendants' eligibility for appointed counsel into a full adversarial proceeding. The Court will permit defendants to submit their financial declarations under seal and ex parte (for the Court's eyes only). If the government wishes to provide information that it feels will improve the Court's ability to make an "appropriate inquiry" into any defendant's financial circumstances, the government may submit such information. Initially, that information may be submitted under seal and ex parte, for the Court's eyes only.

If, after considering any information provided by the government, the Court concludes that defendants have met their burden of demonstrating their eligibility, the Court will return to the government the information that it submitted, without disclosing that information to the defendants. But if the information submitted by the government leads the court to conclude that defendants have not met their burden, then the Court will disclose that information to the defense – to position the defendants to try to rebut the adverse inferences supported by the government's submissions. The Court will not deny a defendant a right on the basis of information never disclosed to the defendant.

By 11:00 a.m. on Tuesday, August 26, 2008, each defendant in this case who seeks appointment of counsel under the CJA must submit a fully and truthfully completed financial declaration (on the form used by the Court). Any such declaration may be submitted under seal and ex parte, for the Court's eyes only. By 5:00 p.m. on Thursday, August 28, 2008, the government must submit any information that it wants the Court to consider in determining any defendant's eligibility. Initially, the government may submit any such information under seal and ex parte, for the Court's eyes only. The Court will determine promptly thereafter whether defendants have met their burden. If the Court concludes that, because of the submissions by the government, the defendants have failed to meet their burden, the

1  Court will disclose to the defendants the information that the government submitted.

3  IT IS SO ORDERED.

4  Dated: August 21, 2008

   _____
   WAYNE D. BRAZIL
   United States Magistrate Judge

Copies to:
   All parties via ECF, Frances
   WDB, Stats, Financial

file: appointing counsel for defendants – determining eligibility