**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*Ronald V. Dellums Federal Building*      *(510) 637-3680*
*1301 Clay Street, Suite 340S*
*Oakland, California 94612*      *FAX:(510) 637-3724*

August 25, 2008

Honorable Wayne D. Brazil
United States Magistrate Judge
1301 Clay Street
Oakland, CA 94612

Re:     United States v. Edith Nelson, Ronald Nelson, Nelda Asuncion, and Cristeta Lagarejos, CR08-477 DLJ

Dear Magistrate Judge Brazil:

In its order dated August 21, 2008, this Court has rejected the government's argument that, under the facts of this particular case involving a mortgage loan fraud scheme exceeding $20 million, an open, adversarial proceeding to determine whether the defendants (who were offered use and derivative use immunity) is the most reliable and effective method of obtaining complete and truthful information about their financial eligibility for court-appointed counsel. This Court ruled that any defendant in the above-captioned matter who seeks court-appointed counsel may submit a financial declaration, ex parte and under seal, without any review by the government. This Court has further ruled that, if the government wishes to provide information to assist the court in making an appropriate inquiry into any defendant's financial circumstances, it may do so initially ex parte and under seal. However, if the government's information leads the court to conclude that defendants have not met their burden, the court will disclose that information to the defendants to afford them the opportunity to "rebut the adverse inferences supported by the government's submissions" (Opinion, p. 4).

Under this procedure, the government would have to blindly submit information without any knowledge of the defendants' claims. If the Court does not decide in the first instance that defendants are entitled to court-appointed counsel, it will provide the defendants with the opportunity to review and rebut the government's submissions, but will deny the government the opportunity to have any access to the defendants' financial declarations or their submissions in rebuttal. In this Court's view, this procedure "effects an appropriate balance between the competing interests that are at play in this case in the dispute between the parties" (Opinion, p. 1).

This Court has rejected the government's reliance upon Kastigar v. United States, 406 U.S. 441 (1972), to offer use and derivative use for any statements made by the defendants for the purpose of obtaining court-appointed counsel. This Court opined that, although it "does not doubt the sincerity of the prosecutor's offer not to use any of the disclosed financial information to help discover other incriminating evidence or to inform even indirectly any other aspect of the government's development or presentation of its case in chief, the Court worries about whether even

the most sincere prosecutor or case agent could keep this kind of promise. Is it realistic to expect a prosecutor and case agents to be able to compartmentalize (wall off) the disclosed information as rigidly as keeping this promise would require? Once the government's lawyers and investigators learn this information, how could even they be sure that it did not play some role in their *thinking* about how to most effectively develop leads, or their *thinking* about what additional kinds of evidence might be useful and how to go about finding or presenting it?" (emphasis added) (Opinion, p. 2).

This Court's view that use and derivative use immunity does not protect the defendants from the government's "thinking" about the immunized evidence is inconsistent with well-established law governing immunity. The issue is not what the government is or is not capable of "thinking" about – but, rather, the procedure established by the Supreme Court in Kastigar that shifts a "heavy burden" to the government to prove that "all of the evidence it proposes to use was derived from legitimate independent sources." Id. at 461. Indeed, as the Supreme Court recognized, "a defendant against whom incriminating evidence has been obtained through a grant of immunity may be in a stronger position at trial than a defendant who asserts a Fifth Amendment coerced-confession claim." Id. The Supreme Court further concluded that a grant of immunity "leaves the witness and the prosecutorial authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege. The immunity therefore is coextensive with the privilege and suffices to supplant it." Id. at 462.

This Court also expressed concern that the government's immunity offer would not "protect" the defendants from use of their immunized statements "during cross-examination or in the rebuttal stages of the trial of this case." (Opinion,, p. 2). It is a well established principle of law that the criminal justice system does not protect defendants, who make perjurious or other false statements, from impeachment of their credibility. See Harris v. New York, 401 U.S. 222, 226 (1971). As for this Court's additional concern that the defendants' immunized statements could be used "in a possible subsequent prosecution that could be based on conduct or allegations that are not reached by the pending indictment," this would defeat the purpose of use and derivative use immunity – and government's counsel knows of no such law that would support that proposition.

This Court further stated that "[f]ear (by defendants and/or their lawyers) that their truthfully disclosed financial information would end up contributing to their conviction would pressure defendants either to decide not to seek appointed counsel or lie on their declarations. The more pressure to lie in their declarations that defendants feel, the greater the threat will be to Congress' goal of determining reliably which defendants are entitled to publicly paid representation" (Opinion. p. 3). First, as discussed above, defendants' financial disclosures would not contribute to their convictions with a grant of immunity. Second, if defendants seek court-appointed counsel under circumstances where their financial inability to retain counsel has been questioned, their financial disclosures properly should be subject to scrutiny. If, after such scrutiny, it is determined that the defendants have provided complete and truthful information, they will qualify or not qualify for court-appointed counsel. Under no circumstances is lying an option. If defendants decide to lie on their financial affidavits, those false statements should not result in a financial reward at the

taxpayers' expense. If the government is denied access to defendants' financial disclosures and their rebuttals to the government's information, the truth-seeking process will be thwarted and the purposes of the Criminal Justice Act will not be served. Based upon this Court's order, defendants could make any assertion, which the government would not be in the position to refute even though it may have evidence to contradict the defendants' undisclosed assertions.

The government sought an open proceeding where both parties would have access to all of the financial claims and disclosures that would result in a complete and accurate portrayal of defendants' ability or inability to retain counsel, or contribute to the costs of a court-appointed attorney. In its opinion, this Court stated that "there is no reason to believe Congress anticipated or would want to fund" full adversarial proceedings (Opinion, p. 3). However, as set forth in the government's papers filed on August 20, 2008, in submitting the Criminal Justice Act to Congress in 1963, Attorney General Robert F. Kennedy stated:

> the requirement of an 'appropriate inquiry' to determine the defendant's financial need is intended to assure that the court, *by hearing, affidavit or other suitable investigation*, will *scrutinize* all applications for representation (emphasis added).

H.R. Rep. No. 864, 88th Cong., 1st Sess., *reprinted in* 1964, U.S. Code Cong. & Admin. News 2990, 2996. The government further pointed out that other courts have conducted proceedings "*by hearing, affidavit or other suitable investigation*" to ensure that the defendant's claims to obtain court-appointed counsel are fully scrutinized. In the absent of such scrutiny, funds at the taxpayers' expense will be expended contrary to Congress' intent and authorization.

As for this Court's concern about "substantial new demands on the resources of the courts" if both parties have the opportunity to participate in an open proceeding, a government challenge to a defendant's representations of inability to pay for counsel is extremely rare and would only be pursued if there were legitimate questions that needed to be fully explored and resolved. In my nine years as a federal prosecutor, I have never previously challenged the assignment of court-appointed counsel.

Finally, this Court speculates that an open proceeding "would set a precedent that other prosecutors in other cases might abuse in order to gain access to information from the defense that would otherwise remain shielded and inaccessible. Prosecutors might be tempted to use such a hearing, in a context like this, as a means to end run Congressionally mandated limits on pretrial discovery and/or try to get a preview of key aspects of how the defense would try the case" (Opinion, p. 3). This Court's comments are pure speculation that are unwarranted, gratuitous, and denigrating to the role of prosecutors as truth seekers and upholders of the law. The concern here should not be that a prosecutor in the future might potentially abuse the information provided by a defendant, but, rather, whether a criminal defendant has provided complete and truthful information that complies with the Criminal Justice Act.

     Given that the defendants have the burden of proof, they should be required, as a minimum, to provide evidence to this court to support their claims in their ex parte financial affidavits regarding their income and assets as well as that of their spouse and other sources. For example, defendants should submit earning statements; savings and checking account statements and other bank records; interest, dividends, retirement and annuity payments, business and personal tax returns, value of stocks, bonds, trust, estates, life insurance policies, vehicles, yachts and boats; and the availability of other assets, etc. Defendants' proof should include the equity in all properties, both inside and outside the United States. If defendants claim that certain properties lack equity, they should be required to prove that claim with reliable evidence of value and any encumbrances.[1]

     Since this Court has permitted the defendants to file their financial information ex parte and under seal, government's counsel will need to be promptly informed as to which defendants have filed such submissions. If this Court discloses the government information, filed ex parte and under seal, to the defendants under the terms of its order, the United States respectfully submits that the court's disclosure should be limited to the particular issue at hand and the particular defendant to whom the information applies and not a wholesale disclosure of all of the government's information, most of which constitutes undiscoverable work product.

     Very truly yours,

     JOSEPH P. RUSSONIELLO
     United States Attorney

     DEBORAH R. DOUGLAS
     Assistant United States Attorney

---

[1] Based upon written guidance within the United States Attorney's Office, a valuation by Zillow.com, an internet-based appraisal is "not considered as accurate as appraisals by licensed appraisers, and in fact may be way off. Indeed, they are generally not accepted by banks for mortgages, or given much weight by courts in valuation disputes."

4